[No. D036986. Fourth Dist., Div. One. Apr. 29, 2002.]

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
WILLIAM A. KARGES, JR., et al., Real Parties in Interest.

1284

**COUNSEL**

Skadden, Arps, Slate, Meagher & Flom, Vaughn C. Williams; McKenna & Cuneo, Robert S. Brewer, Jr., and Michael H. Fish for Petitioner.

No appearance for Respondent.

Finkelstein & Krinsk, Howard D. Finkelstein, Mark L. Knutson; Milberg, Weiss, Bershad, Hynes & Lerach, John J. Stoia, Jr., and William S. Dato for Real Parties in Interest.

**OPINION**

**BENKE, Acting P. J.—**

SUMMARY

By way of its petition for extraordinary relief defendant Massachusetts Mutual Life Insurance Company (Mass Mutual) challenges the trial court's order certifying as a plaintiffs' class 33,000 people who, over a course of 15 years, purchased a particular type of life insurance product from Mass Mutual. We issued an order to show cause and have received a response from the plaintiffs and real parties in interest.

The product the plaintiffs purchased not only provided insurance coverage and a guaranteed return on accumulated premium, but also permitted plaintiffs to share in dividends which the company declared on a discretionary basis. In theory and as suggested by Mass Mutual's agents in sales presentations, over time the principal amount of accumulated premiums would be large enough so that the amount of the discretionary dividend would pay the annual premium due on the policy. In the insurance industry these products are generically referred to as "vanishing premium" policies. Mass Mutual offered its customers what it called an N-Pay premium payment plan.

Plaintiffs contend that at the time they purchased policies Mass Mutual was paying a discretionary dividend rate which Mass Mutual had no intention of maintaining. The plaintiffs believe they have evidence which shows Mass Mutual in fact developed plans to "ratchet down" its dividend over time. Plaintiffs believe Mass Mutual's failure to disclose to purchasers its own conclusions about its high discretionary dividend rate and its plans to lower the rate give rise to liability for violations of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL) and Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA).

Mass Mutual contends plaintiffs' claims are not suitable for class treatment because Mass Mutual believes that each plaintiff will be required to make an individual showing of the representation he or she received. We disagree. In order to establish liability for a nondisclosure under either the UCL or the CLRA, plaintiffs need not present individual proof that each class member relied on particular representations made by Mass Mutual or its agents. Accordingly, we deny Mass Mutual's petition.

## DISCUSSION

### I

Code of Civil Procedure section 382 authorizes the maintenance of a class action "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." ■ Class treatment is permissible under Code of Civil Procedure section 382 when the plaintiffs have established the existence of an ascertainable class and a well-defined community of interest. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) "The community of interest" requirement embodies three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

■ A class action under the CLRA is governed exclusively by the terms of Civil Code section 1781, rather than the more general provisions of Code of Civil Procedure section 382. (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655, fn. 6 [22 Cal.Rptr.2d 419] (*Caro*); *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 140 [142 Cal.Rptr. 325].) However, Civil Code section 1781, subdivision (b), like Code of Civil Procedure section 382, permits a class action only when there are questions of law or fact which predominate over questions affecting individual members. (*Caro, supra,* 18 Cal.App.4th at pp. 666-669.)[1]

■ An appellate court "will 'not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' " (*Caro, supra,* 18 Cal.App.4th at p. 655.) Where a certification order turns on inferences to be drawn from the facts, " 'the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Ibid.,* fn. 6, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].) In its order granting certification the trial court made no specific findings and no request for findings appears in the record. Thus we may also resort to the familiar rule that permits us to imply

---

[1]Unlike a plaintiff proceeding under Code of Civil Procedure section 382, a plaintiff moving to certify a class under the CLRA is not required to show that substantial benefit will result to the litigants and the court. (*Hogya v. Superior Court, supra,* 75 Cal.App.3d at pp. 134-135.) Thus, unlike Code of Civil Procedure section 382, the CLRA does not require that a plaintiff show a probability that each class member will come forward and prove his separate claim to a portion of the recovery. (*Hogya,* at pp. 134-135.)

any findings which are necessary to support the trial court's order, so long as any such implied findings are themselves supported by substantial evidence. (See *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].)

## II

By its terms the UCL prohibits as unfair competition "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) The statute has been found to prohibit "wrongful business conduct in whatever context such activity might occur." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111 [101 Cal.Rptr. 745, 496 P.2d 817], fn. omitted.) ■ Importantly, California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury. (*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 452-453 [153 Cal.Rptr. 28, 591 P.2d 51] (*Fletcher*); *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660]; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266-1267 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 331 [74 Cal.Rptr.2d 55]; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229], disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187 [83 Cal.Rptr.2d 548, 973 P.2d 527] and fn. 12; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1144 [111 Cal.Rptr.2d 296]; see also *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 134 [96 Cal.Rptr.2d 485, 999 P.2d 718].) Although the UCL plaintiffs do not bear the traditional burden required of victims of common law fraud, by the same token relief under the UCL is limited to injunctive relief and restitution. (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 129; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 179.) The UCL does not provide for the recovery of damages or attorney fees. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at pp. 1266-1267; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 179.)

The leading case on what a plaintiff must establish in order to prevail on a statutory unfair trade practice claim is *Fletcher.* In *Fletcher,* a class representative alleged he and other customers of the defendant bank had been deceived by the bank's practice of calculating "per annum interest" on the basis of a 360-day year. The bank argued class treatment was not appropriate because it believed its liability under the false advertising law,

Business and Professions Code section 17500,[2] could not be established without individual proof as to the impact its activities had on each customer. (*Fletcher, supra,* 23 Cal.3d at p. 450.) In rejecting the bank's argument, the court stated: "[O]ur concern with thwarting unfair trade practices has been such that we have consistently condemned not only those alleged unfair practices which have in fact deceived the victims, *but also those which are likely to deceive them.* [Citations.]" (*Id.* at p. 451, italics added.) Thus the court concluded that under the statute "the court retains the authority to order restitution without an individualized showing on the knowledge issue if the court determines that such a remedy is necessary 'to prevent the use or employment' of the unfair practice at issue in this case." (*Id.* at p. 453.)

Since *Fletcher* was decided, our courts have not departed in any manner from the principle that liability for restitution under either the specific false advertising provisions of Business and Professions Code section 17500 or the broader provisions of the UCL may be found without any individualized proof of deception and solely on the basis a defendant's conduct was likely to deceive consumers. In *Committee on Children's Television, Inc. v. General Foods Corp.* the court relied on this principle in finding that alleged misleading statements about the nature of sugared cereals were sufficient to maintain a UCL cause of action against cereal manufacturers. (*Committee on Children's Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d at p. 197.) In an insurance coverage case, *Bank of the West,* the court again relied on the principle that individualized proof of deception, reliance and injury are unnecessary under the UCL. The court found this aspect of the UCL demonstrated the important deterrent purpose of the statute and concluded the statute's utility as a deterrent would be undermined if defendants were able to obtain insurance coverage for UCL claims. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1267.)

The court in *Day v. AT & T Corp.* considered the issue in the context of plaintiffs who alleged the defendant's practice of rounding up to the next full minute the charges incurred on prepaid phone cards was deceptive. In finding the practice was sufficient to support a claim for injunctive relief under the UCL, the court stated: "By their breadth, [(§§ 17200, 17500)] encompass not only those advertisements which have deceived or misled *because* they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information,

---

[2]Any act proscribed by Business and Professions Code section 17500 is also an unfair business practice within the meaning of the UCL. (Bus. & Prof. Code, § 17200.)

is actionable under these sections." (*Day v. AT & T Corp., supra,* 63 Cal.App.4th at pp. 332-333.)

In *State Farm Fire & Casualty Co. v. Superior Court* the court considered allegations insurers had engaged in deceptive practices in altering the manner in which earthquake coverage was offered to consumers and in handling earthquake claims. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102-1105 [53 Cal.Rptr.2d 229].) In finding the insurers were subject to the remedies provided by the UCL, the court stated: "[T]he 'fraud' contemplated by section 17200[] . . . bears little resemblance to common law fraud or deception. The test is whether the public is likely to be deceived. [Citation.] This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. [Citation.] No discussion is required to demonstrate that plaintiffs' allegations regarding State Farm's allegedly fraudulent acts easily satisfy this test." (*Id.* at p. 1105.)

More recently in *Prata v. Superior Court* the court found that a plaintiff could bring a representative action[3] under the UCL against a bank which promised to provide consumers 90-day "same as cash" financing but in fact required installment payments. The bank argued the plaintiff was not a proper representative because his experience, which involved oral statements made by a stereo salesman, was unique. Relying again on the principle that liability under the UCL depends upon whether a defendant's practices are *likely* to deceive, the court rejected the bank's contention as one which focused "on individual matters of proof irrelevant to liability under the UCL." (*Prata v. Superior Court, supra,* 91 Cal.App.4th at p. 1146.)

---

[3]As Mass Mutual points out, a representative action under the UCL is different from a class action. In a representative action under Business and Professions Code section 17204 a private plaintiff is permitted to pursue the injunctive and restitution relief provided by the UCL on behalf of the public without showing that he was directly harmed by the defendant's business practices. (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438].) In a class action a plaintiff sues on his own behalf as well as on behalf of members of the class and the class must be certified under the provisions of Code of Civil Procedure section 382. (See *Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 126, fn. 10.) The court in *Kraus v. Trinity Management Services, Inc.,* stated: "Both consumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights. Class actions and representative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions. Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition. These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts. [Citations.]" (23 Cal.4th at p. 126, fn. omitted.)

■ Given the wide variety of procedural and substantive contexts in which it has been applied, we are in no position to either abandon or ignore the principle set forth in *Fletcher* that relief under the UCL, including restitution, is available without proof of individual deception, reliance and injury. Rather, as the cases make clear, the power to impose a remedy under the UCL will arise whenever a defendant's business practice is likely to deceive consumers. California's UCL jurisprudence, to which we are clearly bound, distinguishes this case from the host of out of state authorities cited by Mass Mutual which have found vanishing premium claims are not suitable for class action treatment. None of the cases Mass Mutual has cited involve the UCL and its unique scope.[4] Here plaintiffs have presented evidence Mass Mutual withheld from its customers and agents its own view of the amount of discretionary dividend it was paying. A trier of fact could find Mass Mutual's recognition that its dividend rate was excessive would have been important to prospective N Pay purchasers and that Mass Mutual's failure to disclose its own conclusions was misleading. Such a determination would in turn support a restitution order under the UCL.

The record here can be readily distinguished from the circumstances we confronted in *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861 [85 Cal.Rptr.2d 301] (*South Bay*). In *South Bay* the trial court made a factual finding that the defendant's calculation of interest on a 365/360 basis on financing the defendant provided to sophisticated automobile dealers was not likely to mislead the dealers and hence did not violate Business and Professions Code section 17200. We found substantial evidence to support the trial court's finding and affirmed its judgment in favor of the defendant. (*South Bay*, at pp. 888-890.) Unlike the record in *South Bay*, here there is not yet any factual finding members of the class were aware of Mass Mutual's assessment of its discretionary dividends and its determination to lower them.

---

[4]See, e.g., *In re Jackson Nat'l Life Ins. Co. Premium Litig.* (W.D.Mich. 2000) 193 F.R.D. 505; *Keyes v. Guardian Life Ins. Co. of Am.* (S.D.Miss. 2000) 194 F.R.D. 253; *Adams v. Kansas City Life Ins. Co.* (W.D.Mo. 2000) 192 F.R.D. 274; *Kent v. SunAmerica Life Ins. Co.* (D.Mass. 2000) 190 F.R.D. 271; *Cohn v. Massachusetts Mut. Life Ins. Co.* (D.Conn. 1999) 189 F.R.D. 209; *In re Hartford Sales Practices Litig.* (D.Minn. 1999) 192 F.R.D. 592; *Cunningham v. PFL Life Ins. Co.* (N.D.Iowa 1999) 42 F.Supp.2d 872; *Velasquez v. Crown Life Ins. Co.* (S.D.Tex. Aug. 10, 1999, No. M-97-064-MDL-1096) 1999 U.S.Dist. LEXIS 13186; *Young v. Nationwide Life Ins. Co.* (S.D.Tex. 1998) 183 F.R.D. 502; *Rothwell v. Chubb Life Ins. Co. of Am.* (D.N.H. 1998) 191 F.R.D. 25; *Peoples v. American Fid. Life Ins. Co.* (N.D.Fla. 1998) 176 F.R.D. 637; *Young v. Ray Brandt Dodge, Inc.* (E.D.La. 1997) 176 F.R.D. 230; *Mentis v. Delaware Am. Life Ins. Co.* (Del.Super. May 30, 2000, No. C.A. 98C-12-023WTQ) 2000 WL 973299; *Humana, Inc. v. Castillo* (Fla.Dist.Ct.App. 1999) 728 So.2d 261.

In this regard we note that Mass Mutual has presented evidence that it warned purchasers and agents that its dividend rate was likely to be reduced. Plainly, the trial court will have to determine whether these warnings were sufficient under the UCL in light of what Mass Mutual had determined about its dividend rate. Resolution of that question, which goes solely to the merits of plaintiffs' claim, is not appropriate in determining whether a class should be certified. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 439-441.)

Similarly, evidence Mass Mutual made annual dividend decisions based on advice it received from its actuaries and evidence that prospective purchasers received differing representations from Mass Mutual's agents will not satisfy the requirements of the UCL. Under the UCL the trial court will be required to determine whether the information Mass Mutual possessed should have been disclosed given the characteristics of the N-Pay product the company was selling and other information it commonly provided policyholders. Thus plaintiffs' UCL claim presents common legal and factual issues which were plainly suitable for treatment as a class action.

### III

The CLRA is set forth in Civil Code section 1750 et seq. Unlike the UCL, under the CLRA a consumer may recover actual damages, punitive damages and attorney fees. (Civ. Code, § 1780, subds. (a)(1), (5), (d).) However, relief under the CLRA is limited to "[a]ny consumer who suffers any damage *as a result* of the use or employment by any person of a method, act, or practice" unlawful under the act. (Civ. Code, § 1780, subd. (a), italics added.)
As Mass Mutual argues, this limitation on relief requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm. (See *Caro, supra,* 18 Cal.App.4th at pp. 667-668.)

Contrary to Mass Mutual's contention, the causation required by Civil Code section 1780 does not make plaintiffs' claims unsuitable for class treatment. "Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." (*Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 907, fn. 22.) Thus, "[i]t is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least

an inference of reliance would arise as to the entire class." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814 [94 Cal.Rptr. 796, 484 P.2d 964]; see also *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750]; *Varacallo v. Mass. Mut. Life Ins. Co.* (2000) 332 N.J.Super. 31 [752 A.2d 807, 817] [finding causation in N-Pay case provable on classwide basis].)

In *Vasquez v. Superior Court,* a representative plaintiff brought a fraud action on behalf of consumers who had purchased frozen food and freezers on installment contracts. The representatives alleged that, using a memorized script, the defendants had materially misrepresented the quality and value of the food and freezers the plaintiffs had agreed to purchase. With respect to reliance, the court stated: "The rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence. 'The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.' [Citations.]" (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 814.)

In *Occidental Land, Inc. v. Superior Court,* the plaintiffs brought a fraud action on behalf of 155 purchasers of homes in a subdivision. They alleged that in a written estimate of the cost of maintenance of common areas and facilities, the defendant developer failed to include substantial costs the developer had subsidized. The court held that class treatment of claims growing out of the failure to disclose the subsidy was appropriate: "As we held in *Vasquez,* an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation. That principle controls the present case. Because the purchases made by plaintiffs were acts consistent with their reliance on the subdivision report, we conclude that the trial court did not err in inferring that justifiable reliance may be established on a common basis." (*Occidental Land, Inc. v. Superior Court, supra,* 18 Cal.3d at p. 363.)

Like the circumstances discussed in *Vasquez* and *Occidental,* here the record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase of an N-Pay premium payment plan. If plaintiffs are successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient.

We recognize that in determining whether the inference of reliance arises, the trial court will have to consider whether other information which Mass Mutual disclosed about its dividend rate provided buyers with all the material information they needed in making a decision to purchase Mass Mutual's product. However, the information Mass Mutual provided to prospective purchasers appears to have been broadly disseminated. Given that dissemination, the trial court could have reasonably concluded that the ultimate question of whether the undisclosed information was material was a common question of fact suitable for treatment in a class action.[5]

Contrary to Mass Mutual's argument, nothing we said in *Caro* undermines the general rule permitting common reliance where material misstatements have been made to a class of plaintiffs. Rather, our holding in *Caro* merely stands for the self-evident proposition that such an inference will not arise where the record will not permit it. In *Caro* the plaintiff brought a class action under the CLRA, alleging the defendants had represented and marketed as fresh and without additives orange juice which in fact was reconstituted from frozen concentrate and contained additives. In finding these claims were not appropriate for class treatment under the CLRA, we stated: "On this record the court properly concluded individual issues involving the existence and nature of any material misrepresentation would predominate over common issues. ' "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. [Citation.] Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did. [Citation.] . . ." [Citation.]' [Citation.] [Plaintiff] alleged defendants' primary advertising and labeling misrepresentations were that [defendant's] orange juice was 'fresh' and contained 'no additives.' However, as the superior court properly noted, there was no material misrepresentation to [plaintiff] because he did not believe defendants' product to be 'fresh.' Whether other class members believed the juice was 'fresh' would be a matter of individual proof. Further, although [plaintiff's] deposition testimony might be construed as suggesting he personally was misled into believing the juice contained 'no additives,' it would be a matter of individualized proof whether the claim of 'no additives' constituted a material misrepresentation to class members who—unlike [plaintiff]—read the portions of the label stating 'from concentrate.' Indeed, at deposition [plaintiff] himself testified if he had read the bottom part of the

---

[5]Plainly, should it develop that class members were provided such a variety of information that a single determination as to materiality is not possible, the trial court has the flexibility to order creation of subclasses or to decertify the class altogether. (See *Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 821.) At this point, however, the record fully supports the trial court's determination Mass Mutual's failure to disclose its own conclusion presents an issue common to class members.

three sides of the carton saying 'from concentrate,' he would have concluded it did not contain 'premium' juice. Moreover, from examining the carton the superior court could reasonably infer only a limited number of consumers would believe they were buying something other than 'from concentrate' juice. Thus, the court properly concluded the issue whether any asserted misrepresentation induced the purchase of [defendant's] orange juice would vary from consumer to consumer." (*Caro, supra*, 18 Cal.App.4th at pp. 668-669.)

Here, unlike the situation we considered in *Caro*, there is no evidence any significant part of the class had access to all the information plaintiffs believe they needed before purchasing N-Pay premium payment plans. Indeed, there is nothing in the record which shows that Mass Mutual's own assessment of the discretionary dividends was disclosed to any class member. If the undisclosed assessment was material, an inference of reliance as to the entire class would arise, subject to any rebuttal evidence Mass Mutual might offer.

In sum then the trial court did not abuse its discretion in concluding that as to plaintiffs' CLRA claim common questions of law or fact would predominate.

## IV

Finally, we reject Mass Mutual's contention that its statute of limitation defenses will require individual determinations of fact. As plaintiffs point out, the respective statutes of limitation, Business and Professions Code section 17208 (four years) and Civil Code section 1783 (three years), will probably run from the time a reasonable person would have discovered the basis for a claim. (See *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 828, 832 [195 Cal.Rptr. 421]; *Samuels v. Mix* (1999) 22 Cal.4th 1, 9 [91 Cal.Rptr.2d 273, 989 P.2d 701].) Given the fact that plaintiffs' claim is based on a nondisclosure, the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment.

Moreover, we note that "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and . . . predominance are otherwise present." (*In re Energy Systems Equip. Leasing Sec. Litigation* (E.D.N.Y. 1986) 642 F.Supp. 718, 752-753.)

## Disposition

The petition is denied. Real parties in interest to recover costs.

McDonald, J., and McIntyre, J., concurred.

A petition for a rehearing was denied May 29, 2002, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied July 24, 2002. Werdegar, J., and Brown, J., did not participate therein.