60 Cal.Rptr.3d 111 (2007)
151 Cal.App.4th 667
Tim McADAMS, Plaintiff and Appellant,
v.
MONIER, INC., Defendant and Respondent.
No. C051841.
Court of Appeal of California, Third District.
May 30, 2007.
As Modified on Denial of Rehearing June 25, 2007.
*112 Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos, Sacramento; Berding & Weil, Steven R. Weinmann, Alamo; Levy, Ram & Olson and Erica L. Craven, San Francisco, for Plaintiff and Appellant.
Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald A Reiter and Kathrin Sears, Deputy Attorneys General as Amicus Curiae on behalf of Plaintiff and Appellant.
Lieff, Cabraser, Heimann & Bernstein, Jonathan D. Selbin and Kristen E. Law, San Francisco, for Executive Council of Homeowners as Amicus Curiae on behalf of Plaintiff and Appellant.
Law Offices of Robles & Castles, William A. Robles and Ranjani Ramakrishna, San Francisco, for Defendant and Respondent.
Fred J. Hiestand, Sacramento; Morrison & Foerster and William L. Stern, for the Civil Justice Association of California, the California Chamber of Commerce, the California Manufacturers and Technology Association, and the California Bankers Association as Amici Curiae on behalf of Defendant and Respondent.
DAVIS, J.
This appeal involves a proposed class action under the Consumers Legal Remedies Act (CLRA; Civ.Code, § 1750 et seq.) and the Unfair Competition Law (UCL; Bus. & Prof.Code, § 17200 et seq.). The action is based on the defendant's alleged failure to disclose that the color composition of its roof tiles would erode away, leaving bare concrete, well before the end of the tiles' represented 50-year life. The trial court declined to certify a class as to these two statutory counts.
We agree with case law that an "inference of common reliance" may be applied to a CLRA class that alleges a material misrepresentation consisting of a failure to disclose a particular fact. Applying an "inference of common reliance" may satisfy *113 the CLRA's requirement that a consumer must have "suffer[ed] ... damage as a result" of the unlawful act or practice. Pursuant to this requirement, plaintiffs in a CLRA action must show that a defendant's conduct was deceptive and that the deception caused them harm. (Civ.Code, § 1780, subd. (a); Massachusetts Mutual Life Ins. Co. v. Superior Court (2002) 97 Cal.App.4th 1282, 1293, 119 Cal.Rptr.2d 190 (Massachusetts Mutual).)
We conclude here that an "inference of common reliance" may likewise be applied to a UCL class that alleges a material misrepresentation consisting of a failure to disclose a particular fact. As amended by Proposition 64 at the November 2004 general election, the UCL now requires, in terms similar to the CLRA, that a private plaintiff have "suffered injury in fact and [have] lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204.)
Consequently, we reverse the trial court's order denying class certification for the CLRA and the UCL counts.

BACKGROUND
Plaintiff Tim McAdams, on behalf of himself and all others similarly situated (plaintiff), filed a class action lawsuit against defendant Monier, Inc. (Monier)[1] for violating the CLRA and the UCL.[2]
Plaintiff alleges that Monier, a manufacturer and marketer of roof tiles, has made representations to class members over a period of years along three lines that its tiles: (1) are free from manufacturing defects and will remain structurally sound for a period of 50 years; are warranted for 50 years; and will last a lifetime and do not wear out (what we will term the 50year/lifetime representation); (2) have a permanent color glaze that requires no resurfacing; have a virtually impenetrable color glaze; have color that will last as long as the tile, with red tiles remaining red and brown tiles remaining brown (with some softening of color to a uniform finish); will always look good and have permanent color; and never lose their basic aesthetic appeal (what we term the permanent color representation); and (3) need no care at all; and require no maintenance (what we term the maintenance-free representation).
Plaintiff alleges that Monier, against the backdrop of these representations, knowingly failed to disclose that its tiles "are inherently defective such that their material composition causes the exterior surface of the [tiles] (including the glaze and slurry-coated color exterior) to deteriorate, degrade, and disperse from the [t]iles well in advance of their warranted 50-year useful life." In short, plaintiff alleges that Monier knew but failed to disclose a particular fact: that the color composition of its tiles would erode away well before the end of the tiles' represented 50-year life, leaving plain (noncolored) concrete.
Plaintiff moved to certify two classes:
(1) a CLRA class, comprising (i) "all individuals in the State of California who own homes (for personal, family or household use) with slurry-coated roof tiles sold by Monier Company, Monier Roof Tile, Inc. or Monier Inc. between January 1, 1978[,] and August 14, 1997 (the `Tiles')"; *114 and (ii) "all Californian individuals who paid to replace or repair such Tiles [excepting trial judge and family, and defendants]"; and
(2) an ownership class, comprising (i) "all other individuals or entities in the State of California who own structures with slurry-coated roof tiles sold by Monier Company, Monier Roof Tile, Inc. or Monier Inc. between January 1, 1978[,] and August 14, 1997 (the `Tiles')"; and (ii) "all Californian individuals and entities who paid to replace or repair such Tiles [excepting trial judge and family, and defendants]."
The trial court denied plaintiffs class certification motion. The court reasoned that each class member would individually have to prove the particular misrepresentation on which he or she relied and the resulting damage, and that plaintiff McAdams, who bought his Monier roof tiles from an independent distributor, was not typical of those who bought from Monier directly, or from a home builder, or from a prior homeowner.
Plaintiff appealed the order denying class certification, which is an appealable order, (hinder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435, 97 Cal.Rptr.2d 179, 2 P.3d 27.)

DISCUSSION

1. Standard of Review

An appellate court will "not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 470, 174 Cal.Rptr. 515, 629 P.2d 23 (Richmond ); accord, Caro v. Procter & Gamble Co. (1993) 18 Cal.App.4th 644, 655, 22 Cal. Rptr.2d 419 (Caro).)

2. The CLRA Class

The CLRA (Civ.Code, § 1750 et seq.), "`enacted in 1970, "established a nonexclusive statutory remedy for `unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer....' [Citation.]"' [Citation.] `The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."' (Civ.Code, § 1760.... [Citation.])"' (Wang v. Massey Chevrolet (2002) 97 Cal. App.4th 856, 869, 118 Cal.Rptr.2d 770 (Wang)). The CLRA "shall be liberally construed." (Civ.Code, § 1760.)
"Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by [the CLRA, pursuant to Civil Code] section 1770 may bring an action against that person to recover actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper. (Civ.Code, § 1780, subd. (a).)" (Wang, supra, 97 Cal.App.4th at p. 869, 118 Cal.Rptr.2d 770.)
Under the CLRA, "`[c]onsumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"; and "`[p]erson' means an individual, partnership, corporation, limited liability company, association, or other group, however organized." (Civ.Code, § 1761, subds. (c), (d).)[3]
*115 A class action under the CLRA is governed by section 1781, which specifies as to class certification as follows:
"(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:
"(1) It is impracticable to bring all members of the class before the court.
"(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.
"(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.
"(4) The representative plaintiffs will fairly and adequately protect the interests of the class." (§ 1781, subd. (b).)
Here, the plaintiff alleges in his complaint that, against the backdrop of Monier's representations of 50-year/lifetime, permanent color, and maintenance-free roof tiles, Monier knowingly "failed to disclose that [its] [t]iles are inherently defective such that their material composition causes the exterior surface of the product (including the glaze and slurrycoated color exterior) to deteriorate, degrade, and to lose coating and color well in advance of their warranted 50-year useful life." (Italics added.) In the complaint, plaintiff explained that "the `permanent' glaze on [Monier's] slurry-coated color [t]iles breaks down and ... [o]nce the color coating becomes friable, it detaches from the tile leaving the `bare' concrete exposed"; "the color loss ... is a loss of mass of the concrete product"; "[t]he `permanent' glaze and color is not permanent at all"; and "claimants [have been told] that their remedy [is] to get their roof tiles painted ... or sealed[.]"
As a result of this alleged failure to disclose, plaintiff alleges that Monier violated section 1770, subdivision (a)(5), of the CLRA by "[representing" that its slurrycoated color roof tiles "have characteristics ... which they do not have"; and violated section 1770, subdivision (a)(7), by "[representing" that such tiles "are of a particular standard, quality, or grade" "[when] they are of another." (§ 1770, subd. (a)(5), (a)(7).)
The trial court denied plaintiffs motion to certify the CLRA class on two grounds. First, the court found that class members would have to prove individually the existence of liability, reliance, and damages, thereby failing to meet the common issues requirement of section 1781, subdivision (b)(2). And second, the court found that representative plaintiff McAdams's CLRA claim was not typical, thereby failing to meet the typicality requirement of section 1781, subdivision (b)(3). The trial court centered these findings on its view that class members received different representations regarding the roof tiles in four different types of purchase transactions (buying from Monier, or from an independent distributor, or from a home builder, or from a prior homeowner), and therefore individual questions, particularly of liability and reliance, predominated. We disagree.
We conclude the trial court misperceived the nature of plaintiffs CLRA class action. The class action is based on a single, specific, alleged material misrepresentation: Monier knew but failed to disclose that its color roof tiles would erode to bare concrete long before the life span of the tiles was up. As we shall explain, in this context, class treatment is appropriate.
On the issues of liability and reliance, the decision in Massachusetts Mutual guides our analysis of the suitability of plaintiffs CLRA action for class treatment.
*116 In Massachusetts Mutual, the court upheld class certification of 33,000 people who, over the course of 15 years, purchased a particular type of life insurance policy (the N-Pay premium payment plan) from Mass Mutual. Mass Mutual represented that, with an N-Pay policy, a discretionary dividend paid on accrued premiums would, over time, become large enough to pay the annual premium. (97 Cal.App.4th at p. 1286, 119 Cal.Rptr.2d 190.) The plaintiff class in Massachusetts Mutual alleged, however, that Mass Mutual failed to disclose that it had no intention of maintaining its then-high discretionary dividend rate. (Ibid.)
Quoting section 1780, subdivision (a), the Court of Appeal in Massachusetts Mutual noted that relief under the CLRA is limited to "`[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice' unlawful under the act." (Massachusetts Mutual, supra, 97 Cal.App.4th at p. 1292, 119 Cal.Rptr.2d 190, italics added by Massachusetts Mutual.) The court added that "this limitation on relief requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm." (Ibid.; see also Caro, supra, 18 Cal.App.4th at pp. 667-668, 22 Cal.Rptr.2d 419.)
The court in Massachusetts Mutual concluded, however, that this causation requirement under the CLRA did not render the case before it unsuitable for class treatment. Drawing from two state Supreme Court decisions, Vasquez v. Superior Court (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (Vasquez) and Occidental Land, Inc. v. Superior Court (1976) 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750 (Occidental), Massachusetts Mutual concluded that this causation requirement can be satisfied if the record permits an "inference of common reliance" to the class. (Massachusetts Mutual, supra, 97 Cal. App.4th at pp. 1292-1293, 119 Cal.Rptr.2d 190.)
Vasquez involved a class action based on fraud. The plaintiffs in Vasquez alleged that defendants, using a memorized script, materially misrepresented the quality and value of freezers and frozen food that plaintiffs had purchased. Vasquez quoted a treatise that "`[w]here representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on'" (Vasquez, supra, 4 Cal.3d at p. 814, 94 Cal.Rptr. 796, 484 P.2d 964, quoting 12 Williston on Contracts (3d ed.1970) 480); and Vasquez stated that if "material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." (Vasquez, supra, at p. 814, 94 Cal.Rptr. 796, 484 P.2d 964; accord, Massachusetts Mutual, supra, 97 Cal.App.4th at pp. 1292-1293, 119 Cal.Rptr.2d 190.) In short, as Massachusetts Mutual noted, plaintiffs may satisfy their burden of "`showing causation as to each [class member] by showing materiality as to all.'" (Massachusetts Mutual, supra, 97 Cal.App.4th at p. 1292, 119 Cal.Rptr.2d 190, quoting Blackie v. Barrack (9th Cir.1975) 524 F.2d 891, 907, fn. 22.)
Occidental also involved a class action based on fraud, and employed Vasquez's "inference of [common] reliance." (Occidental, supra, 18 Cal.3d at pp. 358, 363, 134 Cal.Rptr. 388, 556 P.2d 750.) In Occidental, the defendant developer of a planned development provided a written report to home purchasers showing their cost for maintaining common areas and facilities, but failed to include in the report substantial costs the developer had been subsidizing. (Id. at pp. 358-359, 134 Cal. *117 Rptr. 388, 556 P.2d 750.) The Occidental court held that class treatment of claims growing out of this failure to disclose the subsidy was appropriate. As in Vasquez, "an inference of reliance [could be established on a common basis] if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation." (Occidental, supra, 18 Cal.3d at p. 363, 134 Cal.Rptr. 388, 556 P.2d 750; see Massachusetts Mutual, supra, 97 Cal.App.4th at p. 1293,119 Cal.Rptr.2d 190.)
Based on Vasquez and Occidental, Massachusetts Mutual concluded: "Like the circumstances discussed in Vasquez and Occidental, here the record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the [high discretionary dividend rate] it was paying and that those concerns would have been material to any reasonable person contemplating the purchase of an N-Pay premium payment plan. If plaintiffs are successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient." (Massachusetts Mutual, supra, 97 Cal.App.4th at p. 1293, 119 Cal.Rptr.2d 190; see also Wilens v. TD Waterhouse Group, Inc. (2003) 120 Cal.App.4th 746, 754-756, 15 Cal.Rptr.3d 271 (Wilens).)
The record here permits an inference of common reliance among the CLRA class. Plaintiff alleges that Monier made a single, material misrepresentation to class members that consisted of a failure to disclose a particular fact regarding its roof tiles. Plaintiff has tendered evidence that Monier knew but failed to disclose to class members that the color composition of its roof tiles would erode to bare concrete well before the end of the tiles' represented 50year life; and that this failure to disclose would have been material to any reasonable person who purchased tiles in light of the 50-year/lifetime representation, or the permanent color representation, or the maintenance-free representation. If plaintiff is successful in proving these facts, the purchases common to each class memberthat is, purchases pursuant to this alleged failure to disclose in light of the 50-year life, permanent color, or maintenance-free representationswould be sufficient to permit an inference of common reliance among the class on the material misrepresentation comprising the alleged failure to disclose.
The trial court rejected this view. Citing a decision from this court, Outboard Marine Corp. v. Superior Court (1975) 52 Cal.App.3d 30, 124 Cal.Rptr. 852 (Outboard Marine), the trial court reasoned that if "Monier made no representation to an owner, why would that owner think the color lasts for 50 years? Concealment of a fact is merely the flip side of every affirmative misrepresentation, and ... [p]laintiff[']s claims are actually based upon affirmative representations that allegedly mislead them."
In Outboard Marine, however, we held that the CLRA, pursuant to its list of proscribed practices in section 1770, includes the concealment or suppression of material facts. Our statement there "that every affirmative misrepresentation of fact works a concealment of the true fact" (52 Cal.App.3d at p. 36, 124 Cal.Rptr. 852) simply rejected a view that two distinct causes of action under section 1770 could be stated, one based on the affirmative misrepresentation and the other on its corresponding concealment. (Id. at pp. 36-37, 124 Cal.Rptr. 852.) After this quoted statement in Outboard Marine, we added that, in the CLRA context, "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it or *118 who gives information of other facts which are likely to mislead for want of communication of that fact." (Outboard Marine, supra, 52 Cal.App.3d at p. 37, 124 Cal. Rptr. 852, italics added.)
Here, plaintiffs CLRA class action is based on an alleged failure to disclose a material fact that is misleading in light of other facts (affirmative representations) that Monier did disclose. Plaintiff alleges that Monier disclosed certain facts regarding its roof tiles50 year warranty; permanent color; and maintenance-free which were likely to mislead consumers in light of Monier's failure to disclose the allegedly known fact that the color composition of its roof tiles would erode to bare concrete well before the represented 50year life of the tiles.
The decision in Bardin v. Daimler-Chrysler Corp. (2006) 136 Cal.App.4th 1255, 39 Cal.Rptr.3d 634 (Bardin) illustrates how Outboard Marine applies to an alleged misrepresentation under the CLRA that comprises a failure to disclose. In Bardin, the court concluded that the plaintiffs there could not state a CLRA cause of action, in the failure to disclose context, based on an allegation that the defendant auto manufacturer used tubular steel in its exhaust manifolds instead of more durable and more expensive cast iron. (Bardin, supra, 136 Cal.App.4th at pp. 1260, 1276, 39 Cal.Rptr.3d 634.) After quoting the Outboard Marine language set forth above, Bardin concluded: "Plaintiffs' claim for violation of the CLRA fails because [their] complaint neither alleged facts showing [defendant auto manufacturer] was `bound to disclose' its use of tubular steel exhaust manifolds, nor alleged facts showing [auto manufacturer] ever gave any information of other facts which could have the likely effect of misleading the public `for want of communication' of the fact it used tubular steel exhaust manifolds. The ... complaint did not allege a single affirmative representation by [manufacturer] regarding the exhaust manifolds." (Id. at p. 1276, 39 Cal.Rptr.3d 634.) In short, the complaint in Bardin did not allege that the manufacturer had made any representations regarding the composition of the exhaust manifolds. (See also Dougherty v. American Honda Motor Co., Inc. (2006) 144 Cal.App.4th 824, 833-836, 51 Cal.Rptr.3d 118 (Daugherty) ["although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose," p. 835, 51 Cal.Rptr.3d 118].)
Here, plaintiff has alleged affirmative representations by Monier regarding its roof tiles50-year warranty/lifetime; permanent color; and maintenance-freethat were likely to mislead consumers by failing to disclose the known fact that the color composition of Monier's roof tiles erodes to bare concrete well before their 50-year life span.
For these reasons, we conclude that, as to the elements of liability and reliance (causation), plaintiffs CLRA cause of action, based on the alleged failure to disclose just noted, is suitable for class treatment.
This analysis also dispenses with the trial court's concern that plaintiff McAdams's claim is typical of only one of the four kinds of roof tile purchasers in the proposed classthose who bought from an independent distributor and relied on Monier literature (the other three kinds of purchasers involving purchases from Monier, from homebuilders, or from individuals selling their homes). As we have seen, the alleged material misrepresentation in this case, properly viewed, does not encompass an array of varying transactions and misrepresentations, *119 but a single failure to disclose a particular known fact. In this milieu, plaintiff McAdams presents a typical claim based on that single, specific failure to disclose.[4] We also pause to note here that a cause of action under the CLRA may be established independent of any contractual relationship between the parties. (See § 1780, subd. (a); Wang, supra, 97 Cal.App.4th at p. 869, 118 Cal.Rptr.2d 770 ["Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by section 1770 may bring an action against that person"]; see also, Chamberlan v. Ford Motor Co. (N.D.Cal.2005) 369 F.Supp.2d 1138, 1144 ["Plaintiffs who purchased used cars have standing to bring CLRA claims, despite the fact that they never entered into a transaction directly with" defendant auto manufacturer who manufactured, sold, and distributed automobiles containing an allegedly defective engine part].)
That leaves the issue of individual damages. "A class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." (Acree v. General Motors Acceptance Corp. (2001) 92 Cal. App.4th 385, 397, 112 Cal.Rptr.2d 99.) Here, the claims of all class members "`stem from the same source'"Monier's failure to disclose that the color composition of its roof tiles may erode to bare concrete prematurely. (See Chamberlan v. Ford Motor Co. (N.D.Cal.2004) 223 F.R.D. 524, 526.) To obtain damages, each class member will have to show the representation made to him or her that accompanied this failure to disclose (e.g., 50-year warranty/lifetime, permanent color, maintenance-free, or the like), and will have to show the amount of his or her damages. But these two showings do not invoke "substantial and numerous factually unique questions to determine [the] individual right to recover" damages, and therefore are not a proper basis on which to deny class certification. (Acree, supra, at p. 397, 112 Cal.Rptr.2d 99; accord, Wilens, supra, 120 Cal.App.4th at p. 756, 15 Cal. Rptr.3d 271.)
Aside from the CLRA class requirement of common issues (§ 1781, subd. (b)(2); involving here the issues of liability, reliance, and damages) and the requirement of a typical claim on the part of the class representative (§ 1781, subd. (b)(3)), there has been no suggestion that plaintiff failed to meet the remaining CLRA class requirements, as specified in section 1781, subdivision (b) (i.e., impracticable to bring all class members before court; representative plaintiff will adequately protect class interests). (§ 1781, subd. (b)(1), (b)(4), respectively.) We have concluded, as to the requirements of common issues and typical claim, that the trial court used improper criteria and made erroneous legal assumptions in denying certification of the CLRA class. (Richmond, supra, 29 Cal.3d at p. 470, 174 Cal.Rptr. 515, 629 P.2d 23.) Accordingly, we reverse the order denying certification of the proposed CLRA class.[5]

3. The UCL Class

"The purpose of the UCL (Bus. & Prof. Code, § 17200 et seq.) `is to protect both *120 consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]' [Citation.] It `defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)]." (§ 17200.)'[[6]] [Citation.]
"The scope of the UCL is quite broad. [Citations.] Because the statute [§ 17200, defining unfair competition] is framed in the disjunctive, a business practice need only meet one of the three criteria [unlawful, unfair or fraudulent] to be considered unfair competition.
"A cause of action for unfair competition under the UCL may be established `"independent of any contractual relationship between the parties."'" (McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1470-1471, 49 Cal.Rptr.3d 227, quoting and citing Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 949,119 Cal.Rptr.2d 296, 45 P.3d 243.) The UCL is limited to injunctive, restitutionary and related relief. (§ 17203.)
A UCL action may be brought by public prosecutors or by private persons. (§ 17204.) Proposition 64, an initiative measure approved at the November 2004 general election, restricted the standing of private persons to bring UCL actions. Prior to Proposition 64, the UCL authorized "any [private] person" to sue on behalf of the "general public" by granting standing to "any person acting for the interests of itself, its members or the general public." (Former § 17204.) In line with this broad grant of standing, an action for fraud under the UCL could be brought by a private person even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. (See Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660; State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1105, 53 Cal.Rptr.2d 229 (State Farm).) This broad grant of standing proved too tempting to some unethical private lawyers who brought "frivolous [UCL] lawsuits against small businesses even though [the lawyers had] no client or evidence that anyone [had been] damaged or misled." (Voter Information Pamp., General Elec. (Nov. 2, 2004) argument in favor of Prop. 64, p. 40.)
Proposition 64 was designed to counter this abuse of the UCL. The proposition, among other things, amended sections 17204 and 17203 of the UCL. Now, under section 17204, standing for a private person under the UCL is limited to "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition," And under section 17203, a private "person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure [which specifies class action requirements]."
For his UCL class action, plaintiff relies on the same material misrepresentationMonier's failure to disclose the premature color erosion of the roof tilesthat he alleges as the basis of his CLRA class action.
The question is how the Proposition 64 amendments to sections 17204 and 17203 *121 affect the plaintiffs proposed UCL class action.
To start with, plaintiff, as the class representative, must meet the standing requirements of section 17204; that is, he must have suffered injury in fact and have lost money or property as a result of the alleged failure to disclose. (§§ 17203, 17204; see Laster v. T-Mobile USA Inc. (S.D.Cal.2005) 407 F.Supp.2d 1181, 1194 (Laster) ["The language of the UCL, as amended by Proposition 64, makes clear that a showing of causation is required as to each representative plaintiff'].) No one suggests there is any problem in this respect concerning standing.
The real issue is whether plaintiffs UCL claim is suitable for class treatment. Under section 17203, as amended by Proposition 64, a private person's UCL action on behalf of others must comply with the class requirements specified in Code of Civil Procedure section 382. As specified by section 382 and by case law interpreting it, the section requires: impracticability in bringing all parties before the court; predominant common questions of law or fact; a class representative who has a typical claim and who can adequately represent the class; and substantial benefit to the litigants and to the court. (§ 382; Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326, 17 Cal.Rptr.3d 906, 96 P.3d 194; Massachusetts Mutual, supra, 97 Cal.App.4th at p. 1287 & fn. 1, 119 Cal.Rptr.2d 190.) Aside from the substantial benefit criterion, these are the same requirements that we discussed in considering plaintiffs CLRA class action.
As it did with the proposed CLRA class, the trial court denied class certification of the UCL class on the basis that individual questions of liability, reliance and damage were predominant, and that plaintiffs claim was typical of only one of the four different kinds of roof tile purchasers.
As for liability, the UCL class action, like the CLRA class action we just discussed, is based on the following alleged material misrepresentation: Monier knew but failed to disclose that the color composition of its roof tiles would erode to bare concrete well before the represented or warranted 50-year life of the tiles. Contrary to the trial court's view, the alleged misrepresentation underlying this class action comprises a single, specific misrepresentation of a particular fact, and the claims of all class members "`stem from [this] same source.'" (See Chamberlan v. Ford Motor Co., supra, 223 F.R.D. at p. 526.) This particular failure to disclose arose against the backdrop of Monier's representations that its roof tiles had a 50year life, were of permanent color, and were maintenance-free. (See Bardin, supra, 136 Cal.App.4th at p. 1276, 39 Cal. Rptr.3d 634 [construing the nature of a misrepresentation that consists of a failure to disclose, in the analogous CLRA context].)
The real nub of the issue of UCL class suitability here turns on the element of reliance (causation). As amended by Proposition 64, section 17204 requires, for purposes of standing, that a private plaintiff have "suffered injury in fact and [have] lost money or property as a result of such unfair competition." Furthermore, it is a basic principle of standing that "`[t]he definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right.'" (Collins v. Safeway Stores, Inc. (1986) 187 Cal.App.3d 62, 73, 231 Cal.Rptr. 638, quoting McElhaney v. Eli Lilly & Co. (D.S.D.1982) 93 F.R.D. 875, 878; Feitelberg v. Credit Suisse First Boston, LLC (2005) 134 Cal.App.4th 997, 1018, 36 Cal. Rptr.3d 592.) As we shall explain, the *122 concept of "inference of common reliance" can be applied here to satisfy these two quoted principles of standing, rendering plaintiffs UCL action suitable for class treatment.
Massachusetts Mutual again points the way. As we discussed in the previous section of this opinion, that decision applied an "inference of common reliance" in determining that a fraud-based class action under the CLRA was suitable for class treatment.
As Massachusetts Mutual noted, "relief under the CLRA is limited to `[a]ny consumer who suffers any damage as a result of the use or employment ... of a method, act, or practice' unlawful under the act." (Massachusetts Mutual, supra, 97 Cal. App.4th at p. 1292, 119 Cal.Rptr.2d 190, quoting § 1780, subd. (a), italics expanded from Massachusetts Mutual.) Similarly, relief for private plaintiffs under the UCL, as specified in the Proposition 64-amended section 17204, is limited to those who have "suffered injury in fact and [have ] lost money or property as a result of such unfair competition." (§ 17204, italics added.) Massachusetts Mutual further noted that this limitation on relief in the CLRA "requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm." (97 Cal.App.4th at p. 1292, 119 Cal.Rptr.2d 190; see also Cam, supra, 18 Cal.App.4th at pp. 667-669, 22 Cal.Rptr.2d 419.) Similarly, private plaintiffs in a UCL action must now show, after Proposition 64, not only that a defendant's conduct was deceptive but that the deception caused them harm. In other words, the days are over when a private plaintiff could bring a fraud-based UCL action on behalf of the general public even if no one was actually deceived or relied upon the fraudulent practice or sustained any damage. (See State Farm, supra, 45 Cal. App.4th at p. 1105, 53 Cal.Rptr.2d 229.)
However, as Massachusetts Mutual critically recognized, this causation requirement did not make the plaintiffs' claims there "unsuitable for class treatment." (97 Cal.App.4th at p. 1292, 119 Cal.Rptr.2d 190.) Drawing from the state Supreme Court decisions in Vasquez and Occidental, Massachusetts Mutual concluded that an "inference of common reliance" could arise as to an entire class if a material misrepresentation was made to the class members. (Id. at pp. 1292-1293,119 Cal.Rptr.2d 190.)
What we said in the previous section of this opinion regarding the suitability of a CLRA class action based upon an "inference of common reliance" applies equally regarding the suitability of a UCL class action here:
"The record here permits an inference of common reliance among the [UCL] class. Plaintiff alleges that Monier made a single, material misrepresentation to class members that consisted of a failure to disclose a particular fact regarding its roof tiles. Plaintiff has tendered evidence that Monier knew but failed to disclose to class members that the color composition of its roof tiles would erode to bare concrete well before the end of the tiles' represented 50year life; and that this failure to disclose would have been material to any reasonable person who purchased tiles in light of the 50-year/lifetime representation, or the permanent color representation, or the maintenance-free representation. If plaintiff is succesful in proving these facts, the purchases common to each class *123 memberthat is, purchases pursuant to this alleged failure to disclose in light of the 50-year life, permanent color, or maintenance-free representationswould be sufficient to permit an inference of common reliance among the class on the material misrepresentation comprising the alleged failure to disclose." (See p. 117, infra.)
We conclude, then, that the Proposition 64-amended standing requirement for private plaintiffs under the UCLi.e., "suffered injury in fact and ... lost money or property as a result of such unfair competition" (§ 17204)may be satisfied by an "inference of common reliance" that renders a UCL claim suitable for class treatment.
Several factors support our conclusion that this standard of "inferred reliance" from the CLRA class context may also be applied to the Proposition 64 UCL class context. The CLRA and the UCL are both consumer protection statutes with traditionally less rigorous proof burdens than common law fraud. (See Civ.Code, § 1760; § 17200; Consumer Advocates v. Echostar Satellite Corp. (2003) 113 Cal. App.4th 1351, 1360, 8 Cal.Rptr.3d 22; Comment, The California Consumers Legal Remedies Act (1973) 10 Cal. Western L.Rev. 161.) After Proposition 64, the two acts' language on reliance is similar (i.e., suffer "damage" (CLRA), or "injury in fact" (UCL), "as a result of). (Civ.Code, § 1780, subd. (a); § 17204.) The two acts are often alleged in the same lawsuit, and a CLRA violation can serve as the "unlawful" prong and furnish the "fraudulent" basis of a UCL action. (See Daugherty, supra, 144 Cal.App.4th at pp. 837-838, 51 Cal.Rptr.3d 118.) The Proposition 64 amendments on UCL standing at issue here were designed simply to close a "loophole" that allowed private persons to bring UCL actions on behalf of the abstract "general public," even though no one had been damaged or misled. (Voter Information Pamp., supra, analysis by Legislative Analyst, pp. 38-39; argument in favor of Prop. 64, p. 40; see Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 232, 46 Cal. Rptr.3d 57, 138 P.3d 207 (Mervyn's) [Proposition 64 "left entirely unchanged the substantive rules governing business and competitive conduct"].) And if the principle of inferred reliance is sufficient to satisfy the element of reliance/causation as to a CLRA fraud-based class action, in which damages can be awarded, it certainly is sufficient to satisfy that element for a similar UCL class action where the remedies are essentially limited to injunctive and restitutionary relief.[7]
That leaves the class issues concerning typical claim, damages, and substantial benefits to the litigants and the court.
What we said in our CLRA discussion regarding typicality and damages applies similarly here. As for typicality, the focus of the CLRA and the UCL class actions is on a single, specific material misrepresentation involving a failure to disclose the *124 particular fact of premature color erosion to bare concrete; representative plaintiff McAdams's claim is typical in this respect. As for individual "damages" (actually, individual restitution under the UCL; § 17203), substantive individual questions do not predominate as each claim stems from the same sourcethis particular failure to disclose. Each class member who seeks individual restitution, however, will have to show the representation made to him or her (e.g., the 50-year/lifetime, permanent color, or maintenance-free representation, or the like) that accompanied this failure to disclose. (See Mervyn's, supra, 39 Cal.4th at p. 232, 46 Cal.Rptr.3d 57, 138 P.3d 207 [under the UCL, "a private person may recover restitution only of [that money or property] that the defendant has unfairly obtained from such person or in which such person has an ownership interest"].)
Finally, given that the CLRA and the UCL actions here are based on the same alleged material misrepresentation (failure to disclose) and given that we have concluded the CLRA class action may proceed, substantial benefits to the litigants and to the court will accrue by allowing the UCL class action to proceed here as well.
Accordingly, we conclude the trial court used improper criteria and made erroneous legal assumptions in denying class certification of the proposed UCL class. Consequently, we reverse that order.

DISPOSITION
The order denying class certification of the proposed CLRA and UCL classes is reversed. Plaintiff is awarded his costs on appeal.
SCOTLAND, P.J., and RAYE, J., concur.
NOTES
[1] Monier Lifetile LLC was a named defendant in the trial court, but only Monier, Inc. is a party to this appeal.
[2] Plaintiff also alleged a count for breach of express warranty, which is not at issue in this appeal. Another named plaintiff, Richard Wallace, has been dismissed.
[3] Unless otherwise specified, undesignated section references are to the Civil Code.
[4] If efficiency would be furthered, the trial court could entertain subclasses aligned with the four kinds of purchasers. (Vasquez, supra, 4 Cal.3d at p. 821, 94 Cal.Rptr. 796, 484 P.2d 964.)
[5] See footnote 4, ante.
[6] Undesignated section references in this section of the Discussion are to the Business and Professions Code.
[7] A federal district court decisionAnunziato v. eMachines, Inc. (C.D.Cal.2005) 402 F.Supp.2d 1133declined to import the CLRA's reliance requirement into the UCL because, first, the CLRA and the UCL have "significant structural differences" (the CLRA prohibits 23 specified practices; "the UCL broadly proscribes `unfair competition'"), and, second, the remedies are different (the CLRA provides for actual and punitive damages, while the UCL does not). (Id. at p. 1137.)