[No. C051841. Third Dist. Feb. 24, 2010.]

TIM McADAMS, Plaintiff and Appellant, v.
MONIER, INC., Defendant and Respondent.

COUNSEL

Berding & Weil, Steven R. Weinmann; Jay-Allen Eisen Law Corporation, Jay-Allen Eisen; Ram & Olson, Michael F. Ram; Merrill, Nomura & Molineaux and Jeffrey B. Cereghino for Plaintiff and Appellant.

Robles & Castles, William A. Robles and Ranjani Ramakrishna for Defendant and Respondent.

OPINION

BUTZ, J.—

## INTRODUCTION

This appeal involves certification of a class action under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.)[1] and the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). The action is based on defendant's alleged failure to disclose that the color composition of its roof tiles would erode away, leaving bare concrete, well before the end of the tiles' represented 50-year lifetime.

In a prior published opinion, we reversed the trial court's order denying certification of the proposed CLRA and UCL classes. (*McAdams v. Monier, Inc.* (May 30, 2007, C051841), as mod. June 25, 2007.) The state Supreme Court granted review and deferred the matter in light of another case on its docket. (*Ibid.*, review granted Sept. 19, 2007, S154088.) The pending case, *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*), concerned two questions of standing arising from the 2004 amendment to the UCL by Proposition 64. The state high court has now directed us to vacate our decision and reconsider it in light of *Tobacco II*. (*McAdams v. Monier, Inc.*, judg. vacated and cause remanded Aug. 19, 2009, S154088.)

In doing so, we reiterate our position involving the CLRA, as *Tobacco II* concerned only the UCL. We agree with case law that an "inference of common reliance" may be applied to a CLRA class that alleges a material misrepresentation consisting of a failure to disclose a particular fact. (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1293 [119 Cal.Rptr.2d 190] (*Massachusetts Mutual*).)

---

[1] Unless otherwise specified, undesignated statutory references are to the Civil Code.

As for the UCL, we remand for the trial court to determine if the representative plaintiff meets the Proposition 64 standing requirements, as interpreted in *Tobacco II*. Otherwise, we find the UCL action suitable for class certification.

Consequently, we reverse the trial court's order denying certification of the proposed CLRA and UCL classes. We do so, however, with one proviso as to defining these classes, which we will explain in this opinion: The members of these classes, prior to purchasing or obtaining their Monier roof tile product, had to have been exposed to a statement along the lines that the roof tile would last 50 years, or would have a permanent color, or would be maintenance-free. (See *Tobacco II, supra*, 46 Cal.4th at p. 324.)

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Tim McAdams, on behalf of himself and all others similarly situated (plaintiff), filed a class action lawsuit against defendant Monier, Inc. (Monier),[2] for violating the CLRA and the UCL.[3]

Plaintiff alleges that Monier, a manufacturer and marketer of roof tiles, has made representations to class members over a period of years along three lines that its tiles (1) are free from manufacturing defects and will remain structurally sound for a period of 50 years; are warranted for 50 years; and will last a lifetime and do not wear out (what we will term the 50-year/lifetime representation); (2) have a permanent color glaze that requires no resurfacing; have a virtually impenetrable color glaze; have color that will last as long as the tile, with red tiles remaining red and brown tiles remaining brown (with some softening of color to a uniform finish); will always look good and have permanent color; and will never lose their basic aesthetic appeal (what we term the permanent color representation); and (3) need no care at all; and require no maintenance (what we term the maintenance-free representation).

Plaintiff alleges that Monier, against the backdrop of these representations, knowingly failed to disclose that its tiles "are inherently defective such that their material composition causes the exterior surface of the [tiles] (including the glaze and slurry-coated color exterior) to deteriorate, degrade, and disperse from the [t]iles well in advance of their warranted 50-year useful life." In short, plaintiff alleges that Monier knew but failed to disclose a

---

[2] Monier Lifetile LLC was a named defendant in the trial court, but only Monier, Inc., is a party to this appeal.

[3] Plaintiff also alleged a count for breach of express warranty, which is not at issue in this appeal. Another named plaintiff, Richard Wallace, has been dismissed.

particular fact: that the color composition of its tiles would erode away well before the end of the tiles' represented 50-year life, leaving plain (noncolored) concrete.

Plaintiff moved to certify two classes: (1) a CLRA class, comprising (i) "all individuals in the State of California who own homes (for personal, family or household use) with slurry-coated roof tiles sold by Monier Company, Monier Roof Tile, Inc. or Monier Inc. between January 1, 1978[,] and August 14, 1997 (the 'Tiles')"; and (ii) "all Californian individuals who paid to replace or repair such Tiles [excepting trial judge and family, and defendants]"; and (2) an ownership class, comprising (i) "all other individuals or entities in the State of California who own structures with slurry-coated roof tiles sold by Monier Company, Monier Roof Tile, Inc. or Monier Inc. between January 1, 1978[,] and August 14, 1997 (the 'Tiles')"; and (ii) "all Californian individuals and entities who paid to replace or repair such Tiles [excepting trial judge and family, and defendants]."

The trial court denied plaintiff's class certification motion. The court reasoned that each class member individually would have to prove the particular misrepresentation on which he or she relied and the resulting damage, and that plaintiff McAdams, who bought his Monier roof tiles from an independent distributor, was not typical of those who bought from Monier directly, or from a home builder, or from a prior homeowner.

Plaintiff appealed the order denying class certification, which is an appealable order. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

## DISCUSSION

*Standard of review*

An appellate court will "not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] (*Richmond*); accord, *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655 [22 Cal.Rptr.2d 419] (*Caro*).)

## I. The CLRA Class

■ The CLRA (§ 1750 et seq.), " 'enacted in 1970, "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction

intended to result or which results in the sale or lease of goods or services to any consumer. . . .' [Citation.]" ' [Citation.] 'The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760 . . . .)' " (*Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 869 [118 Cal.Rptr.2d 770] (*Wang*).) The CLRA "shall be liberally construed." (§ 1760.)

"Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by [the CLRA, pursuant to] section 1770 may bring an action against that person to recover actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper. (Civ. Code, § 1780, subd. (a).)" (*Wang, supra*, 97 Cal.App.4th at p. 869.)

Under the CLRA, " '[c]onsumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"; and " '[p]erson' means an individual, partnership, corporation, limited liability company, association, or other group, however organized." (§ 1761, subds. (d), (c).)

A class action under the CLRA is governed by section 1781, which specifies as to class certification as follows:

"(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

"(1) It is impracticable to bring all members of the class before the court.

"(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

"(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

"(4) The representative plaintiffs will fairly and adequately protect the interests of the class." (§ 1781, subd. (b).)

Here, plaintiff alleges in his complaint that, against the backdrop of Monier's representations of 50-year/lifetime, permanent color, and maintenance-free roof tiles, Monier knowingly "*failed to disclose* that [its] [t]iles are inherently defective such that their material composition causes the exterior surface of the product (including the glaze and slurry-coated color exterior) to deteriorate, degrade, and to lose coating and color well in advance of their

warranted 50-year useful life." (Italics added.) In the complaint, plaintiff explained that "the 'permanent' glaze on [Monier's] slurry-coated color [t]iles breaks down and . . . [o]nce the color coating becomes friable, it detaches from the tile leaving the 'bare' concrete exposed"; "the color loss . . . is a loss of mass of the concrete product"; "[t]he 'permanent' glaze and color is not permanent at all"; and "claimants [have been told] that their remedy [is] to get their roof tiles painted . . . or sealed."

As a result of this alleged failure to disclose, plaintiff alleges that Monier violated section 1770, subdivision (a)(5), part of the CLRA, by "[r]epresenting" that its slurry-coated color roof tiles "have . . . characteristics . . . which they do not have"; and violated section 1770, subdivision (a)(7) by "[r]epresenting" that such tiles "are of a particular standard, quality, or grade" "[when] they are of another." (§ 1770, subd. (a)(5), (7).)

The trial court denied plaintiff's motion to certify the CLRA class on two grounds. First, the court found that class members would individually have to prove the existence of liability, reliance, and damages, thereby failing to meet the common issues requirement of section 1781, subdivision (b)(2). And, second, the court found that representative plaintiff McAdams's CLRA claim was not typical, thereby failing to meet the typicality requirement of section 1781, subdivision (b)(3). The trial court centered these findings on its view that class members received different representations regarding the roof tiles in four different types of purchase transactions (buying from Monier, or from an independent distributor, or from a home builder, or from a prior homeowner), and therefore individual questions, particularly of liability and reliance, predominated. We disagree.

We conclude the trial court misperceived the nature of plaintiff's CLRA class action. The class action is based on a single, specific, alleged material misrepresentation: Monier knew but failed to disclose that its color roof tiles would erode to bare concrete long before the lifespan of the tiles was up. As we shall explain, in this context, class treatment is appropriate.

On the issues of liability and reliance, the decision in *Massachusetts Mutual* guides our analysis of the suitability of plaintiff's CLRA action for class treatment.

In *Massachusetts Mutual*, the court upheld class certification of 33,000 people who, over the course of 15 years, purchased a particular type of life insurance policy (the N-Pay premium payment plan) from "Mass Mutual." Mass Mutual represented that, with an N-Pay policy, a discretionary dividend paid on accrued premiums would, over time, become large enough to pay the annual premium. (*Massachusetts Mutual, supra*, 97 Cal.App.4th at p. 1286.)

The plaintiff class in *Massachusetts Mutual* alleged, however, that Mass Mutual failed to disclose that it had no intention of maintaining its then high discretionary dividend rate. (*Ibid.*)

Quoting section 1780, subdivision (a), the Court of Appeal in *Massachusetts Mutual* noted that relief under the CLRA is limited to " '[a]ny consumer who suffers any damage *as a result* of the use or employment by any person of a method, act, or practice' unlawful under the act." (*Massachusetts Mutual, supra*, 97 Cal.App.4th at p. 1292, italics added by *Massachusetts Mutual*.) The court added that "this limitation on relief requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm." (*Ibid.*; see also *Caro, supra*, 18 Cal.App.4th at pp. 667–668.)

The court in *Massachusetts Mutual* concluded, however, that this causation requirement under the CLRA did not render the case before it unsuitable for class treatment. Drawing from two state Supreme Court decisions, *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*) and *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750] (*Occidental*), *Massachusetts Mutual* concluded that this causation requirement can be satisfied if the record permits an "inference of common reliance" to the class. (*Massachusetts Mutual, supra*, 97 Cal.App.4th at pp. 1292–1293.)

*Vasquez* involved a class action based on fraud. The plaintiffs in *Vasquez* alleged that the defendants, using a memorized script, materially misrepresented the quality and value of freezers and frozen food that the plaintiffs had purchased. *Vasquez* quoted a treatise that " '[w]here representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on' " (*Vasquez, supra*, 4 Cal.3d at p. 814, quoting 12 Williston on Contracts (3d ed. 1970) § 1515, p. 480); and *Vasquez* stated that if "material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." (*Vasquez, supra*, at p. 814; accord, *Massachusetts Mutual, supra*, 97 Cal.App.4th at pp. 1292–1293.) In short, as *Massachusetts Mutual* noted, plaintiffs may satisfy their burden of " 'showing causation as to each [class member] by showing materiality as to all.' " (*Massachusetts Mutual*, at p. 1292, quoting *Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 907, fn. 22.)

*Occidental* also involved a class action based on fraud, and employed *Vasquez*'s "inference of [common] reliance." (*Occidental, supra*, 18 Cal.3d at pp. 358, 363.) In *Occidental*, the defendant developer of a planned development provided a written report to home purchasers showing their cost for

maintaining common areas and facilities, but failed to include in the report substantial costs the developer had been subsidizing. (*Id.* at pp. 358–359.) The *Occidental* court held that class treatment of claims growing out of this failure to disclose the subsidy was appropriate. As in *Vasquez,* "an inference of reliance [could be established on a common basis] if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation." (*Occidental, supra,* 18 Cal.3d at p. 363; see *Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1293.)

Based on *Vasquez* and *Occidental, Massachusetts Mutual* concluded: "Like the circumstances discussed in *Vasquez* and *Occidental,* here the record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the [high discretionary dividend rate] it was paying and that those concerns would have been material to any reasonable person contemplating the purchase of an N-Pay premium payment plan. If plaintiffs are successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient." (*Massachusetts Mutual, supra,* 97 Cal.App.4th at p. 1293; see also *Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 754–756 [15 Cal.Rptr.3d 271] (*Wilens*).)

The record here permits an inference of common reliance among the CLRA class. Plaintiff alleges that Monier made a single material misrepresentation to class members that consisted of a failure to disclose a particular fact regarding its roof tiles. Plaintiff has tendered evidence that Monier knew but failed to disclose to class members that the color composition of its roof tiles would erode to bare concrete well before the end of the tiles' represented 50-year life; and that this failure to disclose would have been material to any reasonable person who purchased tiles in light of the 50-year/lifetime representation, or the permanent color representation, or the maintenance-free representation. If plaintiff is successful in proving these facts, the purchases common to each class member—that is, purchases pursuant to this alleged failure to disclose in light of the 50-year life, permanent color, or maintenance-free representations—would be sufficient to permit an inference of common reliance among the class on the material misrepresentation comprising the alleged failure to disclose. This is also why the CLRA class definition is subject to the proviso specified at the end of this opinion's introduction. (See p. 179, *ante.*)

The trial court rejected this analysis. Citing a decision from this court, *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30 [124 Cal.Rptr. 852] (*Outboard Marine*), the trial court reasoned that if "Monier made no representation to an owner, why would that owner think the color

lasts for 50 years? Concealment of a fact is merely the flip side of every affirmative misrepresentation, and . . . [p]laintiff[']s claims are actually based upon affirmative representations that allegedly misled them."

In *Outboard Marine*, however, we held that the CLRA, pursuant to its list of proscribed practices in section 1770, includes the concealment or suppression of material facts. Our statement there "that every affirmative misrepresentation of fact works a concealment of the true fact" (*Outboard Marine, supra*, 52 Cal.App.3d at p. 36) simply rejected a view that two distinct causes of action under section 1770 could be stated, one based on the affirmative misrepresentation and the other on its corresponding concealment (52 Cal.App.3d at pp. 36–37). After this quoted statement in *Outboard Marine*, we added that, in the CLRA context, "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it or *who gives information of other facts which are likely to mislead for want of communication of that fact*." (52 Cal.App.3d at p. 37, italics added.)

Here, plaintiff's CLRA class action is based on an alleged failure to disclose a material fact that is misleading in light of other facts (affirmative representations) that Monier did disclose. Plaintiff alleges that Monier disclosed certain facts regarding its roof tiles—50-year/lifetime; permanent color; and maintenance-free—which were likely to mislead consumers in light of Monier's failure to disclose the allegedly known fact that the color composition of its roof tiles would erode to bare concrete well before the end of the represented 50-year life of the tiles.

The decision in *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255 [39 Cal.Rptr.3d 634] (*Bardin*) illustrates how *Outboard Marine* applies to an alleged misrepresentation under the CLRA that comprises a failure to disclose. In *Bardin*, the court concluded that the plaintiffs there could not state a CLRA cause of action, in the failure to disclose context, based on an allegation that the defendant auto manufacturer used tubular steel in its exhaust manifolds instead of more durable and more expensive cast iron. (*Bardin, supra*, 136 Cal.App.4th at pp. 1260, 1276.) After quoting the *Outboard Marine* language set forth above, *Bardin* concluded: "Plaintiffs' claim for violation of the CLRA fails because [their] complaint neither alleged facts showing [defendant auto manufacturer] was 'bound to disclose' its use of tubular steel exhaust manifolds, nor alleged facts showing [auto manufacturer] ever gave any information of other facts which could have the likely effect of misleading the public 'for want of communication' of the fact it used tubular steel exhaust manifolds. The . . . complaint did not allege a single affirmative representation by [manufacturer] regarding the exhaust manifolds." (*Id.* at p. 1276.) In short, the complaint in *Bardin* did not allege that the manufacturer had made any representations regarding the composition of the exhaust manifolds. (See also *Daugherty v. American Honda Motor*

*Co., Inc.* (2006) 144 Cal.App.4th 824, 833–836 [51 Cal.Rptr.3d 118] ["although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" (*id.* at p. 835)].)

■ Here, plaintiff has alleged affirmative representations by Monier regarding its roof tiles—50-year/lifetime; permanent color; and maintenance-free—that were likely to mislead consumers by failing to disclose the known fact that the color composition of Monier's roof tiles erodes to bare concrete well before the end of their 50-year lifespan.

For these reasons, we conclude that, as to the elements of liability and reliance (causation), plaintiff's CLRA cause of action, based on the alleged failure to disclose just noted, is suitable for class treatment.

This analysis also dispenses with the trial court's concern that plaintiff McAdams's claim is typical of only one of the four kinds of roof tile purchasers in the proposed class—those who bought from an independent distributor and relied on Monier literature (the other three kinds of purchasers involved purchases from Monier, from home builders, or from individuals selling their homes). As we have seen, the alleged material misrepresentation in this case, properly viewed, does not encompass an array of varying transactions and misrepresentations, but a single failure to disclose a particular known fact. In this milieu, plaintiff McAdams presents a typical claim based on that single, specific failure to disclose.[4] We also pause here to note that a cause of action under the CLRA may be established independent of any contractual relationship between the parties. (See § 1780, subd. (a); *Wang, supra*, 97 Cal.App.4th at p. 869 ["Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by section 1770 may bring an action against that person . . . ."]; see also *Chamberlan v. Ford Motor Co.* (N.D.Cal. 2005) 369 F.Supp.2d 1138, 1144 ["Plaintiffs who purchased used cars have standing to bring CLRA claims, despite the fact that they never entered into a transaction directly with" defendant auto manufacturer who manufactured, sold, and distributed automobiles containing an allegedly defective engine part].)

■ That leaves the issue of individual damages. "A class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so

---

[4] If efficiency would be furthered, the trial court could entertain subclasses aligned with the four kinds of purchasers. (*Vasquez, supra*, 4 Cal.3d at p. 821.)

long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 397 [112 Cal.Rptr.2d 99].) Here, the claims of all class members " 'stem from the same source' "—Monier's failure to disclose that the color composition of its roof tiles may erode to bare concrete prematurely. (*Chamberlan v. Ford Motor Co.* (N.D.Cal. 2004) 223 F.R.D. 524, 526.) To obtain damages, each class member will have to show the representation made to him or her that accompanied this failure to disclose (e.g., 50-year/lifetime, permanent color, maintenance-free, or the like), and will have to show the amount of his or her damages. But these two showings do not invoke "substantial and numerous factually unique questions to determine [the] individual right to recover" damages, and therefore are not a proper basis on which to deny class certification. (*Acree, supra,* at p. 397; accord, *Wilens, supra,* 120 Cal.App.4th at p. 756.)

Aside from the CLRA class requirement of common issues (§ 1781, subd. (b)(2); involving here the issues of liability, reliance, and damages) and the requirement of a typical claim on the part of the class representative (§ 1781, subd. (b)(3)), there has been no suggestion that plaintiff failed to meet the remaining CLRA class requirements, as specified in section 1781, subdivision (b) (i.e., impracticable to bring all class members before court; representative plaintiff will adequately protect class interests). (§ 1781, subd. (b)(1), (4), respectively.) We have concluded, as to the requirements of common issues and typical claim, that the trial court used improper criteria and made erroneous legal assumptions in denying certification of the CLRA class. (*Richmond, supra,* 29 Cal.3d at p. 470.) Accordingly, we reverse the order denying certification of the proposed CLRA class.[5]

## II. The UCL Class

■ "The purpose of the UCL (Bus. & Prof. Code, § 17200 et seq.) 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]' [Citation.] It 'defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)]." (§ 17200.)' [Citation.]

"The scope of the UCL is quite broad. [Citations.] Because the statute [(Bus. & Prof. Code, § 17200, defining unfair competition)] is framed in the

---

[5] See footnote 4, *ante.*

disjunctive, a business practice need only meet one of the three criteria [unlawful, unfair or fraudulent] to be considered unfair competition. [Citation.]

"A cause of action for unfair competition under the UCL may be established ' "independent of any contractual relationship between the parties." ' " (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1470–1471 [49 Cal.Rptr.3d 227], quoting *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal.Rptr.2d 296, 45 P.3d 243].)

The UCL is limited to injunctive, restitutionary and related relief. (Bus. & Prof. Code, § 17203.) In pertinent part, Business and Professions Code section 17203 defines the relief available: "The court may make such orders or judgments . . . as may be necessary to prevent the use . . . of any practice which constitutes unfair competition . . . , or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (§ 17203.)

■ A UCL action may be brought by public prosecutors or by private persons. (Bus. & Prof. Code, § 17204.) Proposition 64, an initiative measure approved at the November 2, 2004 General Election, restricted the standing of private persons to bring UCL actions. Prior to Proposition 64, the UCL authorized "any [private] person" to sue on behalf of the "general public" by granting standing to "any person acting for the interests of itself, its members or the general public." (Former § 17204.) This broad grant of standing proved too tempting to some unethical private lawyers who brought "frivolous [UCL] lawsuits against small businesses even though [the lawyers had] no client or evidence that anyone [had been] damaged or misled." (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) argument in favor of Prop. 64, p. 40.)

Proposition 64 was designed to counter this abuse of the UCL. The proposition, among other things, amended Business and Professions Code section 17204 and added a provision to section 17203. Now, under section 17204, standing for a private person under the UCL is limited to a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." And under Business and Professions Code section 17203, a private "person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of [Business and Professions] Section 17204 and complies with Section 382 of the Code of Civil Procedure [which specifies the requirements to maintain a class action]."

For his UCL class action, plaintiff relies on the same material misrepresentation—Monier's failure to disclose the premature color erosion of the roof tiles—that he alleges as the basis of his CLRA class action.

The question is how the Proposition 64 amendments to Business and Professions Code sections 17204 and 17203 affect plaintiff's proposed UCL class action.

Our state Supreme Court's decision in *Tobacco II, supra,* 46 Cal.4th 298 provides the answer with regard to the amended standing requirements of Business and Professions Code section 17204.

In *Tobacco II,* the high court reversed an order that had denied class certification in a UCL lawsuit. That lawsuit alleged that tobacco companies engaged in extensive false advertising about the health risks and addictive nature of their products. *Tobacco II* involved two questions concerning standing: (1) Who must meet the standing requirement in a UCL class action after Proposition 64—the representative plaintiff or all class members? and (2) What is required to establish standing under the UCL as amended by Proposition 64? (*Tobacco II, supra,* 46 Cal.4th at pp. 306, 314, 324.)

■ As to the first question—*who* must meet the standing requirement— *Tobacco II* concluded that only the representative plaintiff need meet this requirement. *Tobacco II* reasoned that "the references in [Business and Professions Code] section 17203 to one who wishes to pursue UCL claims on behalf of others are in the singular; that is, the 'person' and the 'claimant' who pursues such claims must meet the standing requirements of [Business and Professions Code] section 17204 and comply with Code of Civil Procedure section 382. The conclusion that must be drawn from these words is that only this individual—the representative plaintiff—is required to meet the standing requirements." (*Tobacco II, supra,* 46 Cal.4th at pp. 315–316.)

On this first question, *Tobacco II* added: "Similarly, the language of [Business and Professions Code] section 17203 with respect to those entitled to [UCL] restitution—'to restore to any person in interest any money or property, real or personal, which *may have been acquired*' . . . by means of the unfair practice—is patently less stringent than the standing requirement for the [UCL] class representative—'a person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition.' ([Bus. and Prof. Code,] § 17204 [italics added in *Tobacco II*].) This language, construed in light of the 'concern that wrongdoers not retain the benefits of their misconduct' (*Fletcher v. Security Pacific National Bank* [(1979)] 23 Cal.3d 442, 452 [153 Cal.Rptr. 28, 591 P.2d 51]) [and in light of the limited nature of relief under the UCL—injunction and restitution, not damages—] has led courts repeatedly and consistently to hold that relief [including restitution] under the UCL is available without individualized proof of deception, reliance and injury. (E.g., *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Committee on Children's Television, Inc. v. General Foods Corp.* [(1983)] 35 Cal.3d [197,] 211 [197 Cal.Rptr. 783, 673 P.2d 660].) Accordingly, to hold that the absent

class members on whose behalf a private UCL action is prosecuted must show on an individualized basis that they have 'lost money or property as a result of the unfair competition' ([Bus. & Prof. Code,] § 17204) would conflict with the language in [Business and Professions Code] section 17203 authorizing broader relief—the 'may have been acquired' language—and implicitly overrule a fundamental holding in our previous decisions, including *Fletcher, Bank of the West* and *Committee on Children's Television.* Had this been the intention of the drafters of Proposition 64—to limit the availability of class actions under the UCL only to those absent class members who met Proposition 64's standing requirements—presumably they would have amended [Business and Professions Code] section 17203 to reflect this intention. Plainly, they did not." (*Tobacco II, supra,* 46 Cal.4th at p. 320; see also *id.* at p. 326; see *Massachusetts Mutual, supra,* 97 Cal.App.4th at pp. 1288–1291.)

█ As for the second question on standing—*what* is required to establish standing under the UCL—*Tobacco II* concluded: "While a [representative] plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct [i.e., actual reliance], the plaintiff need not demonstrate it was the only cause . . . ' ". . . or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation . . . has been a substantial factor, in influencing his decision." . . . [¶] Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material ['material' means a reasonable person would attach importance to its existence or nonexistence]. . . . [¶] . . . [¶]

". . . [A representative] plaintiff . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where . . . those misrepresentations and false statements were part of an extensive and long-term advertising campaign." (*Tobacco II, supra,* 46 Cal.4th at pp. 326–327, 328, citations omitted.)

We will remand this matter to the trial court to determine whether the class representative here has, or can demonstrate, UCL standing under this standard. (*Tobacco II, supra,* 46 Cal.4th at p. 306.)

Under Business and Professions Code section 17203, as amended by Proposition 64, not only must the representative plaintiff meet this standard for standing, but that plaintiff must also comply with the class action requirements specified in Code of Civil Procedure section 382. ([Bus. & Prof. Code,] § 17203.) We turn to these class action requirements now.

█ As specified by Code of Civil Procedure section 382 and by case law interpreting it, the section requires: impracticability in bringing all parties before the court; predominant common questions of law or fact; a class

representative who has a typical claim and who can adequately represent the class; and substantial benefit to the litigants and to the court. (Code Civ. Proc., § 382; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194]; *Massachusetts Mutual, supra*, 97 Cal.App.4th at p. 1287 & fn. 1.) Aside from the substantial benefit criterion, these are the same requirements that we discussed in considering plaintiff's CLRA class action.

As it did with the proposed CLRA class, the trial court denied certification of the UCL class on the basis that individual questions of liability, reliance and damage (actually, restitution in the UCL context) were predominant, and that plaintiff's claim was typical of only one of the four different kinds of roof tile purchasers. Again, we disagree.

As for the question of liability, the UCL class action, like the CLRA class action we just discussed, is based on the following alleged material misrepresentation: Monier knew but failed to disclose that the color composition of its roof tiles would erode to bare concrete well before the end of the represented 50-year life of the tiles. Contrary to the trial court's view, the alleged misrepresentation underlying this class action consists of a failure to disclose a particular known fact, and the claims of all class members " 'stem from [this] same source.' " (*Chamberlan v. Ford Motor Co., supra*, 223 F.R.D. at p. 526.) This specific failure to disclose arose against the backdrop of Monier's representations that its roof tiles had a 50-year life, were of permanent color, and were maintenance-free. (See *Bardin, supra*, 136 Cal.App.4th at p. 1276 [construing the nature of a misrepresentation that consists of a failure to disclose, in the analogous CLRA context].) This common question of liability satisfies class action maintenance here. For this same reason, this is also why the UCL class definition is subject to the proviso specified at the end of this opinion's introduction. (See p. 179, *ante*.)

Turning to the questions of reliance and damage (injury), as *Tobacco II* emphasized, " 'California courts have repeatedly held that relief under the UCL [including restitution] is available without individualized proof of deception, reliance and injury.' " (*Tobacco II, supra*, 46 Cal.4th at p. 326, quoting *Massachusetts Mutual, supra*, 97 Cal.App.4th at p. 1288; see also *Tobacco II*, at p. 320; *Massachusetts Mutual*, at p. 1291.) This holds true in the post-Proposition 64 world for nonrepresentative class members. This is because of the three factors noted above in our discussion of *Tobacco II*'s first question regarding standing (i.e., who must satisfy standing): (1) Business and Professions Code section 17203's language that specifies the relief available under the UCL, including restoring money which *"may have been acquired"* by unfair competition (as opposed to the more stringent standing requirement under Bus. & Prof. Code, § 17204 for representative plaintiffs

which are "*as a result of* the unfair competition," italics added); (2) the limited nature of relief available under the UCL (basically, injunction and restitution); and (3) the concern that wrongdoers not retain the benefits of their misconduct. (*Tobacco II, supra*, 46 Cal.4th at p. 320; see also *Massachusetts Mutual, supra*, 97 Cal.App.4th at pp. 1288–1291.) Since *individualized* proof of reliance and injury is *not* required for nonrepresentative class members, the issues of reliance and injury do not foreclose a UCL class action here.

That leaves the class requirements of typical claim and substantial benefits to the litigants and the court (again, as with the CLRA class, there has been no suggestion that plaintiff failed to meet the remaining class requirements—impracticable to bring all class members to court, and adequate representation).

What we said in our CLRA discussion regarding typicality applies similarly here. The focus of the CLRA and the UCL class actions is on an alleged single, specific material misrepresentation involving a failure to disclose the particular fact of premature color erosion to bare concrete; representative plaintiff McAdams's claim is typical in this respect.

Finally, given that the CLRA and the UCL actions here are based on the same alleged material misrepresentation (failure to disclose) and given that we have concluded the CLRA class action may proceed, substantial benefits to the litigants and to the court will accrue by allowing the UCL class action to proceed here as well.

Accordingly, we conclude the trial court used improper criteria and made erroneous legal assumptions in denying certification of the proposed UCL class. Consequently, we reverse that order. We will remand the matter to the trial court to determine if the representative plaintiff meets the UCL standing requirements set forth in *Tobacco II*.

## DISPOSITION

The order denying certification of the proposed CLRA and UCL classes is reversed. The definition of the CLRA and UCL classes is subject to the following proviso: The members of these classes, prior to purchasing or obtaining their Monier roof tile product, had to have been exposed to a statement along the lines that the roof tile would last 50 years, or would have a permanent color, or would be maintenance-free. (See *Tobacco II, supra*, 46 Cal.4th at p. 324.) The matter is remanded to determine whether the representative plaintiff can establish UCL standing as defined in *Tobacco II* and, if not, whether amendment should be permitted to add a new class representative. (See 46 Cal.4th at pp. 328–329.) If the representative plaintiff

satisfies the *Tobacco II* standing requirements, the UCL claim may proceed on a class basis in the trial court. The CLRA claim may proceed on a class basis in the trial court. Plaintiff is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.